IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 12, 2010

| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
|---|---|---|
| | ) | |
| v. | ) | GRAND JURY ORIGINAL |
| | ) | |
| HABTOM MERHAY, | ) | VIOLATIONS: |
| | ) | |
| Defendant. | ) | 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| | ) | |
| | ) | 8 U.S.C. § 1324(a)(2)(B)(ii) |
| | ) | (Bringing an Alien to the United States for |
| | ) | Financial Gain) |
| | ) | |
| | ) | 8 U.S.C. § 1324(a)(1)(A)(iv) and |
| | ) | (a)(1)(B)(i) |
| | ) | (Encouraging and Inducing an Alien to |
| | ) | Come to the United States for Financial |
| | ) | Gain) |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | (Aiding and Abetting and Causing an Act to |
| | ) | Be Done) |
| | ) | |
| | ) | 8 U.S.C.§ 1324(b) and 18 U.S.C. § |
| | ) | 982(a)(6) |
| | ) | (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

At all times relevant to this Indictment:

1

## Introduction

1. The defendant, **HABTOM MERHAY**, was a national of Eritrea, a citizen of the United Kingdom, and at the time of this Indictment, resided primarily in the city of Dubai in the country of the United Arab Emirates (UAE).

2. Eritrea was a country in northeast Africa. The United Kingdom was an island nation in Western Europe. UAE was a nation in the southeast of the Arabian Peninsula.

3. The individuals referred to herein as E.G.T., S.A.M., B.T.B., Y.T.K., S.D.G., S.Y.M., S.G.G., Y.H.M., A.F.H., and D.T. were nationals of Eritrea, who had not received prior official authorization to come to, enter, or reside in the United States. R.B.A. was a national of Ethiopia who had not received prior official authorization to come to, enter, or reside in the United States.

4. All offenses alleged in this Indictment were begun and committed in the UAE and elsewhere outside the jurisdiction of any particular state or district of the United States, but within the extraterritorial jurisdiction of the United States and therefore, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

## The Conspiracy

5. From in or around May 2009 and continuing through in or around September 2010, in the UAE and elsewhere, in the extraterritorial jurisdiction of the United States, defendant

### HABTOM MERHAY

knowingly combined, conspired, confederated, and agreed with others to commit offenses against the United States, more particularly: (a) to bring to and attempt to bring

an alien to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such alien had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later be taken with respect to such alien, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii); and (b) to knowingly encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).

## Object of the Conspiracy

6. The object of the conspiracy was to make money.

## Manner and Means of the Conspiracy

7. The conspirators would and did use the following manner and means, among others, to accomplish the object of the conspiracy.

    a. **HABTOM MERHAY** and his network of coconspirators recruited aliens in Africa and elsewhere who wanted to be smuggled into the United States in exchange for the payment and promised payment of money.

    b. **HABTOM MERHAY** used e-mail and telephones to further the smuggling operation in various ways, including: to communicate with coconspirators in northeast Africa, Latin America, and elsewhere to discuss the smuggling operation, to negotiate smuggling fees for aliens who were to be smuggled into

the United States, to coordinate and implement smuggling arrangements and events, including the provision of fraudulent identity and travel documents, and to resolve issues that arose in the smuggling operation.

c. **HABTOM MERHAY** agreed to help aliens seeking to travel to the United States by helping them travel from Africa and the Middle East to Latin America, in furtherance of their ultimate journey to the United States. To do this, he provided fraudulent identity and travel documents, reserved and purchased flight itineraries, and contacted coconspirators in Africa, the Middle East, and Latin America, to coordinate delivery of the traveling aliens. He provided the aliens with travel advice and contact information for coconspirators to continue their journeys to the United States after arriving in Latin America.

d. **HABTOM MERHAY** conducted his alien smuggling business through the use of a network of coconspirators with whom he shared information and money obtained through his alien smuggling activities; the constitution of the precise team of coconspirators who would most actively participate in the smuggling of any particular alien or group of aliens depended upon the point of origin of the aliens, the manner in which the aliens were recruited, and the specific routes and arrangements that were available to bring them to the United States.

e. **HABTOM MERHAY** and his network of coconspirators transported and caused to be transported aliens and groups of aliens from locations within Eritrea and elsewhere, through the UAE and Latin America and then into the United States, by various means, including by air travel, foot, automobiles, trucks, and flotation

4

devices designed for transport across rivers.

## Overt Acts

8. In furtherance of the conspiracy and to accomplish the object of the conspiracy, **HABTOM MERHAY** and his coconspirators committed various overt acts within the extraterritorial jurisdiction of the United States and elsewhere, including, but not limited to the following:

   a. In or around May 2009, **HABTOM MERHAY** agreed to help E.G.T. travel from the Sudan to the United States, via Latin America, for about $15,000.

   b. In or around May 2009, **HABTOM MERHAY** received payment of about $15,000 from E.G.T.'s brother.

   c. In or around May 2009, **HABTOM MERHAY** gave E.G.T. contact information for a coconspirator in Tulcan, Ecuador.

   d. In or around May 2009, **HABTOM MERHAY** told E.G.T. not to mention **HABTOM MERHAY's** name if he was caught by United States immigration officials.

   e. In or around May or June 2009, **HABTOM MERHAY's** associate and coconspirator traveled with E.G.T. from Dubai, UAE to Cuba.

   f. In or around May or June 2009, **HABTOM MERHAY** and his coconspirators arranged for E.G.T. to travel from Cuba to Ecuador, where he was introduced to the first of a series of coconspirators who later took E.G.T. to Colombia, and ultimately through Central America and to the Mexican border with the United States.

g. In or around July 2009, **HABTOM MERHAY's** coconspirator in Guatemala City, Guatemala gave E.G.T. contact information for **HABTOM MERHAY's** coconspirator in Reynosa, Mexico, a town on the border with the United States.

h. In or around August 2009, **HABTOM MERHAY's** coconspirator in Reynosa, Mexico helped E.G.T. cross the Rio Grande River into the United States.

i. In or around early 2010, **HABTOM MERHAY** agreed to help S.A.M. travel from Dubai, UAE, to the United States for an unknown sum of money of up to $14,000.

j. In or around early 2010, **HABTOM MERHAY** was paid an unknown amount of money by S.A.M.'s aunt and uncle to further S.A.M.'s travel to the United States.

k. In or around March 2010, **HABTOM MERHAY** met S.A.M. at the airport in Dubai, UAE.

l. In or around March 2010, **HABTOM MERHAY** drove S.A.M. to his house in Dubai, where she stayed until her onward travel.

m. In or around March 2010, **HABTOM MERHAY** provided S.A.M. instructions and other information regarding her onward trip to the United States, including contact information for **HABTOM MERHAY**'s coconspirator in Cuba.

n. In or around March 2010, **HABTOM MERHAY** took S.A.M. to the airport in Dubai and advised her to board a flight from Dubai, UAE, to Cuba, where she was met by **HABTOM MERHAY**'s coconspirator.

o. In or around March 2010, **HABTOM MERHAY**'s coconspirator flew with S.A.M. from Cuba to Ecuador, and later took her to the border with Colombia,

where she was introduced to the first of a series of coconspirators who took S.A.M through Central America to the Mexican border with the United States.

p. In or around March-May 2010, **HABTOM MERHAY** instructed S.A.M. to travel to Reynosa, Mexico, to continue her trip to the United States.

q. In or around March-May 2010, **HABTOM MERHAY**'s coconspirator in Bogota, Colombia gave S.A.M. contact information for **HABTOM MERHAY**'s coconspirator in Reynosa, Mexico.

r. In or around March-May 2010, **HABTOM MERHAY**'s coconspirator in Reynosa, Mexico arranged for S.A.M. to cross the Rio Grande River by raft into the United States for $400.

s. In or around February 2010, **HABTOM MERHAY** agreed to help D.T. travel to the United States via South America for $12,000, to be divided among several coconspirators.

t. In or around the spring of 2010, **HABTOM MERHAY** gave D.T. a passport and visa and assisted him in traveling from Dubai airport to Cuba.

u. In or around the spring of 2010, **HABTOM MERHAY's** coconspirator met D.T. in Cuba and flew with him to Ecuador where he delivered him to the first of a series of coconspirators who took D.T. to the Ecuadorian border with Colombia, and ultimately through Central America and to the Mexican border with the United States.

v. In or around the spring of 2010, **HABTOM MERHAY's** coconspirators in Guatemala and Mexico informed D.T. that they had already been paid to help him

travel to the United States.

w.  In or around June of 2010, **HABTOM MERHAY**'s coconspirator in Reynosa, Mexico arranged for D.T. to cross the Rio Grande River into the United States.

x.  In or around May 2010, **HABTOM MERHAY** agreed to arrange for B.T.B. to travel from Kenya to the United States in exchange for money paid to **HABTOM MERHAY** by B.T.B.'s uncle.

y.  In or around May 2010, **HABTOM MERHAY** told B.T.B. to fly from Kenya to Dubai, UAE, where **HABTOM MERHAY** would meet him and arrange for B.T.B.'s onward travel.

z.  In or around July 2010, **HABTOM MERHAY** took B.T.B., who had been staying with **HABTOM MERHAY** since B.T.B.'s arrival in the UAE, to the Dubai airport.

aa. In or around July 2010, **HABTOM MERHAY** confirmed with B.T.B. that B.T.B. would be traveling to the United States.

bb. In or around July 2010, **HABTOM MERHAY** told B.T.B. that **HABTOM MERHAY**'s coconspirator would be accompanying B.T.B. and that B.T.B. should follow the coconspirator's instructions during B.T.B.'s travel.

cc. In or around July 2010, **HABTOM MERHAY** arranged for B.T.B. and **HABTOM MERHAY**'s coconspirator to fly from Dubai, UAE, to Havana, Cuba, and on to Quito, Ecuador.

dd. In or around July 2010, **HABTOM MERHAY** arranged for B.T.B. to be delivered in Ecuador to the first of a series of coconspirators who took B.T.B. to

the Ecuadorian border with Colombia, and ultimately through Central America and to the Mexican border with the United States.

ee. In or around July-September 2010, in a phone conversation, **HABTOM MERHAY** gave B.T.B., who was in Tapachula, Mexico, the phone number of **HABTOM MERHAY**'s coconspirator in Mexico who would transport B.T.B. across the border into the United States.

ff. In or around September 2010, **HABTOM MERHAY**'s coconspirator in Reynosa, Mexico arranged for B.T.B. to cross the Rio Grande River into the United States by raft at night.

(**Conspiracy to Bring an Alien to the United States for Financial Gain and to Encourage and Induce an Alien to Come to the United States for Financial Gain**, in violation of Title 18, United States Code 371, and pursuant to Title 8, United State Code Sections 1324(a)(2)(B)(ii), 1324(a)(1)(A)(iv), and 1324(a)(1)(B)(i).)

## COUNTS TWO through FIVE

9. Paragraphs 1 through 4 and 6 through 8 of Count One of this Indictment are re-alleged as if fully set forth herein.

10. On or about the dates set forth below, beginning in the UAE, Eritrea, Sudan, Kenya, Ecuador and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant

### HABTOM MERHAY

aiding and abetting other coconspirators, who each aided and abetted each other, knowingly attempted to bring and brought aliens, as set forth below in Counts Two

through Five, to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later be taken with respect to such aliens.

| COUNT | ALIEN | DATES |
|---|---|---|
| 2 | E.G.T. | **in or around May 2009 through on or about August 7, 2009** |
| 3 | S.A.M. | **in or around early 2010 through on or around May 29, 2010** |
| 4 | D.T. | **in or around February 2010 through on or around June 1, 2010** |
| 5 | B.T.B. | **in or around May 2010 through on or about September 14, 2010** |

(**Attempted Bringing and Bringing an Alien to the United States for Financial Gain and Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.)

## COUNTS SIX through SIXTEEN

11. Paragraphs 1 through 4 and 6 through 8 of Count One of this Indictment are re-alleged as if fully set forth herein.

12. On or about the dates set forth below, beginning in the UAE, Eritrea, Sudan, Kenya, Ecuador and elsewhere, in the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant

### HABTOM MERHAY

knowingly encouraged and induced aliens, as set forth below in Counts Six through Sixteen, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain.

| COUNT | ALIEN | DATES |
| --- | --- | --- |
| 6 | E.G.T. | in or around May 2009 through on or about August 7, 2009 |
| 7 | S.A.M. | in or around early 2010 through on or around May 29, 2010 |
| 8 | D.T. | in or around February 2010 through on or around June 1, 2010 |
| 9 | B.T.B. | in or around May 2010 through on or about September 14, 2010 |
| 10 | Y.T.K. | in or around the spring of 2009 through in or around August 2009 |

| 11 | S.D.G. | in or around May 2009 through in or around September 2009 |
| 12 | S.Y.M. | in or around October 2009 through in or around May 2010 |
| 13 | R.B.A. | in or around late 2009 through in or around 2010 |
| 14 | S.G.G. | in or around early 2010 through in or around May 2010 |
| 15 | Y.H.M. | in or around May 2010 through in or around September 2010 |
| 16 | A.F.H. | in or around July 2010 through in or around September 2010 |

(**Encouraging and Inducing an Alien to Come to the United States for Profit and Aiding and Abetting and Causing an Act to Be Done**, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), (a)(1)(B)(i), and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

1. The allegations contained in Counts One through Sixteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 8, United States Code, Section 1324(b) and Title 18, United States Code, Section 982(a)(6).

2. As a result of the offenses alleged in Counts One through Sixteen of this Indictment, defendant shall forfeit to the United States of America (1) any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offenses, (2) any and all property, real or personal, constituting, or derived from, proceeds obtained directly or

indirectly as a result of the offenses, and (3) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violations alleged in Counts One through Sixteen of this Indictment. Such property includes, but is not limited to, the following:

> <u>Money Judgment</u>:
> judgment for a sum of money equal to the property constituting, or derived from, any and all proceeds the defendant obtained, directly or indirectly, as a result of such violations alleged in Counts One through Sixteen of this Indictment.

3. By virtue of the commission of the felony offenses charged in Counts One through Sixteen of this Indictment, any and all interest that defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 8, United States Code, Section 1324(b), and Title 18, United States Code, Section 982(a)(6). If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty

it is the intention of the United States, pursuant to Title 8, United States Code, Section 1324(b), Title 18, United States Code, Section 982(a)(6), and Title 21, United States

Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

    (**Criminal Forfeiture**, in violation of Title 8, United States Code, Section 1324(b) and Title 18, United States Code, Section 982(a)(6)).

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia